**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| APRIL BOURKHAN, | ) CASE NO. 1:19-cv-1474 |
| | ) |
| Plaintiff, | ) JUDGE JOHN R. ADAMS |
| | ) |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Defendant. | ) |

Plaintiff April Bourkhan ("Bourkhan" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for period of disability ("POD") and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be REVERSED and REMANDED consistent with this opinion.

I.  PROCEDURAL HISTORY

On June 30, 2009, Bourkhan applied for a POD, DIB, and Supplemental Security Income ("SSI"), alleging disability that began on May 27, 2009. (Doc. 10, tr., at 194-196, 197-203). On January 7, 2011, an administrative law judge ("ALJ") issued a fully favorable decision. (R. 10, tr., at 85-90). The ALJ concluded Bourkhan was disabled from May 27, 2009, through the date of the decision, and that the claimant met the insured status requirements of the Social

Security Act. *Id.* at 85, 90. The ALJ determined that Bourkhan had the following severe impairments: breast cancer status post lumpectomy; fibromyalgia; obesity; diverticulitis; depressive disorder; and borderline personality disorder. *Id.* at 87. The claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that her impairments and symptoms in combination precluded her from sustaining full-time remunerative work in a competitive environment at any level. *Id.* The decision stated, however, that medical improvement was expected with appropriate treatment, and consequently a continuing disability review was recommended in 24 months. *Id.* at 90.

Subsequently, the Social Security Administration determined that Bourkhan was no longer disabled as of February 25, 2014, due to medical improvement. (R. 10, tr., at 94). Claimant requested a hearing; and an administrative law judge ("ALJ") held a hearing in Florida on September 8, 2015, at which claimant appeared with counsel, and a vocational expert testified. *Id.* at 40-81. The ALJ's decision dated October 26, 2015, upheld the medical improvement determination. *Id.* at 17-32. The ALJ found that: medical improvement had occurred, *id.* at 21, claimant was capable of less than light work, with limitations, *id.* at 21-22, claimant was able to perform a significant number of jobs in the national economy, *id.* at 31-32, and Bourkhan's disability ended by February 1, 2014. *Id.* at 32.

The claimant appealed the decision to federal district court, which reversed and remanded for further proceedings. (R. 10, tr., at 1239-1245; *Bourkhan v. Commissioner*, No. 6:16CV1817 (M.D. Fla. Nov 14, 2017)). The court ruled that the ALJ erred by failing to fully develop the record. (R. 10, tr., at 1239).

In the meantime, claimant moved to Ohio and her claim was transferred. (R. 11, PageID #: 1900). A new ALJ conducted a hearing in Akron on July 11, 2018. (R. 10, tr., at 1145-

2

1185). Bourkhan appeared at the hearing, was represented by counsel, and testified. (*Id.* at 1147, 1150-1174). A vocational expert ("VE") also attended the hearing and provided testimony. (*Id.* at 1147, 1174-1182). On September 14, 2018, the ALJ issued the decision, applying an eight-step sequential analysis to determine whether Bourkhan continued to be disabled. (R. 10, tr., at 1111-1132; *see generally* 20 C.F.R. § 404.1594(f)). Based on such review, the ALJ concluded claimant's disability had ended on February 25, 2014. *Id.* at 1132. The Appeals Council denied claimant's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (R. 10, tr., at 1097-1100).

Bourkhan now seeks judicial review of the Commissioner's final decision, pursuant to 42 U.S.C. § 1383(c). Bourkhan presents three legal issues for review:

 1. The ALJ committed legal error by not following the directions of the District Court and by failing to request Plaintiff's progress notes from SMA[1] for the specific dates listed in the decision.

 2. The ALJ's findings at step three that there was medical improvement in Plaintiff's pain, fatigue and mental health conditions and at step four that the improvement was related to Plaintiff's ability to work are not supported by substantial evidence.

 3. The ALJ's finding at step eight that work exists in the general economy that Plaintiff can perform is not based on substantial evidence.

(R. 11, PageID #: 1892).

## II. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in the most recent decision, on September 14, 2018:[2]

 1. The most recent favorable medical decision finding that the claimant was

---

[1] "SMA" is Stewart-Marchman-Act Behavioral Healthcare, a healthcare provider used by claimant. *See*, *e.g.*, R. 10, tr., at 1022.
[2] The bracketed text in the ALJ's subparagraph 10 is in the original decision.

3

disabled is the decision dated January 21, 2011. This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, the claimant had the following medically determinable impairments: breast cancer, status-post lumpectomy, fibromyalgia, obesity, diverticulitis, depressive disorder and personality disorder. These impairments were found to result in the residual functional capacity to perform sedentary work except that her impairments and their symptoms in combination preclude her from sustaining full-time remunerative work in a competitive environment at any level.

3. Through the date of this decision, the claimant has not engaged in substantial gainful activity (20 CFR 404.1594(f)(1)).

4. The medical evidence establishes that, since February 25, 2014, the claimant has had the following medically determinable impairments: obesity, malignant neoplasm of the left breast and post-mastectomy lymphedema syndrome, cervicalgia, lumbago with radiculitis, arthritis, osteoporosis left-sided neuropathy, headaches, schizophrenic disorder, depression, major depressive disorder, bipolar disorder, anxiety disorder, borderline personality disorder and cannabis abuse. These are the claimant's current impairments.

5. Since February 25, 2014, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

6. Medical improvement occurred on February 25, 2014 (20 CFR 404.1594(b)(1)).

7. Since February 25, 2014, the impairments present at the time of the CPD decreased in medical severity to the point where the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant may occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs, but may never climb ladders, ropes, or scaffolds; the claimant must avoid concentrated exposure to extremes of heat and cold, humidity, loud and very loud noise and vibration, and must avoid all exposure to workplace hazards, including unprotected heights and moving mechanical parts; the claimant is limited to the performance of simple, routine, repetitive tasks, undertaken in a work setting free of production rate pace [as is found in assembly line work], which setting requires no more than occasional and superficial [defined as precluding group, tandem or collaborative tasks, as well as tasks involving sales, arbitration, negotiation, confrontation, conflict resolution, the management of, direction of, or persuasion of, others] interaction with co-workers, supervisors and the public, which setting is routine, in that it

contemplates no more than occasional changes in workplace tasks or duties, easily explained and/or demonstrated in advance of gradual integration into the job's processes.

8. The claimant's medical improvement is related to the ability to work because it resulted in an increase in the claimant's residual functional capacity (20 CFR 404.1594(c)(3)(ii)).

9. Since February 25, 2014, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6)).

10. Based on the impairments present since February 25, 2014, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant may frequently handle, finger and feel with the left [hand]; the claimant may occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs, but may never climb ladders, ropes, or scaffolds; the claimant must avoid concentrated exposure to extremes of heat and cold, humidity, loud and very loud noise and vibration, and must avoid all exposure to workplace hazards, including unprotected heights and moving mechanical parts; the claimant is limited to the performance of simple, routine, repetitive tasks, undertaken in a work setting free of production rate pace [as is found in assembly line work], which setting requires no more than occasional and superficial [defined as precluding group, tandem or collaborative tasks, as well as tasks involving sales, arbitration, negotiation, confrontation, conflict resolution, the management of, direction of, or persuasion of, others] interaction with co-workers, supervisors and the public, which setting is routine, in that it contemplates no more than occasional changes in workplace tasks or duties, easily explained and/or demonstrated in advance of gradual integration into the job's processes.

11. Since February 25, 2014, the claimant has been unable to perform past relevant work (20 CFR 404.1565).

12. On February 25, 2014, the claimant was a younger individual age 18-49 (20 CFR 404.1563).

13. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

14. Since February 25, 2014, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

    15. Since February 25, 2014, considering the claimant's age, education, work experience, and residual functional capacity based on the impairments since February 25, 2014, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c), and 404.1566).

    16. The claimant's disability ended on February 25, 2014, and the claimant has not become disabled again since that date (20 CFR 404.1594(f)(8)).

(Doc. 10, tr., at 1113, 1115, 1118, 1119, 1120, 1130, 1131).

### III. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. § 416.905.

### IV. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to determining whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Comm'r of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971)*.* "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kennedy v. Astrue*, No. 06-6582, 2007 WL 2669153, at *3 (6th Cir. Sept. 7, 2007); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)*.* Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, that determination must be affirmed*. Id.*

The Commissioner's determination must stand if supported by substantial evidence,

6

regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *See Kennedy*, 2007 WL 2669153, at *3; *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). However, the court may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

The first issue Bourkhan presents for review asserts: "The ALJ committed legal error by not following the directions of the District Court and by failing to request Plaintiff's progress notes from SMA for the specific dates listed in the decision." (R. 11, PageID #: 1892, 1906). The issue presented by the claimant involves several legal issues regarding her claim for benefits.

The general rule, on remand, is that "it is the duty of the lower court, or the agency from which appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation and without departing from such directions." *Mefford v. Gardner*, 383 F.2d 748, 758 (6th Cir. 1967); *see also Inteso v. Commissioner*, No. 1:16CV1893, 2017 WL 9485668, at *8 (N.D. Ohio Oct. 4, 2017), adopted by 2018 WL 571448 (N.D. Ohio Jan. 26, 2018) (citing *Mefford*); *Parsons v. Astrue*, No. 1:11CV1063, 2012 WL 3853184, at *6 (N.D. Ohio June 13, 2012), adopted by 2012 WL 3852927 (N.D. Ohio Sept. 5, 2012) (citing *Mefford*). "Moreover, if the cause is remanded with specific directions, further proceedings in the . . . agency from which appeal is taken must be in substantial compliance with such directions; and if the cause is

remanded for a specified purpose, any proceedings inconsistent therewith is error." *Id.*; *see also Wilson v. Commissioner*, 783 Fed. App'x 489, 497 (6th Cir. 2019); *Inteso*, 2017 WL 9485668, at *8; *Parsons*, 2012 WL 3853184, at *6.

In the Social Security context, it is the claimant's burden to prove that she is disabled within the meaning of the Act, and to establish that her impairments render her unable to engage in any substantial gainful activity. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Kafantaris v. Berryhill*, No. 1:17CV568, 2018 WL 1157762, at *23 (N.D. Ohio Feb. 2, 2018), *adopted by*, 2018 WL 1122123 (N.D. Ohio Mar. 1, 2018); 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a). Ultimately, the claimant bears the burden of proving her entitlement to benefits. *Boyes v. Secretary, HHS*, 46 F.3d 510, 512 (6th Cir. 1994).

The ALJ, however, has a duty to ensure that a full and fair record is developed, whether or not the claimant is represented by counsel.[3] *See, e.g.*, *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). Where the record does not contain sufficient information to make a determination on a relevant medical issue, "the ALJ, unlike a judge in a trial, must himself affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding" and has a duty to develop the record. *Pullum v. Astrue*, 675 F. Supp. 2d 299, 313 (W.D. N.Y. 2009) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). *See also Rivera v. Barnhart*, 379 F. Supp. 2d 599, 604 (S.D. N.Y. 2005) (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)) (ALJ has obligation to fully develop the record); *Ynocencio v. Barnhart*, 300 F. Supp.

---

[3] When a claimant is without counsel, the ALJ has a heightened duty to develop the record. *Nabours v. Commissioner*, No. 01-6464, 2002 WL 31473794, at *3 (6th Cir. Nov. 4, 2002).

2d 646, 657 (N.D. Ill. 2004) (ALJ's duty to develop full and fair record). Additional evidence or clarification from a medical source must be sought when there is an ambiguity that must be resolved, or necessary information is missing from the record. *Ynocencio*, 300 F. Supp. 2d at 657. In this case, Bourkhan's counsel represented, during the administrative proceedings, that there was specific, relevant medical evidence that the provider, SMA, would not release to counsel but would release to the ALJ. *See* R. 10, tr., at 348.[4]

Failure to fulfill the obligation to develop a full and fair record is "good cause" to remand for the gathering of additional evidence. *Ynocencio*, 300 F. Supp. 2d at 657 (citing *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000)). In determining whether it is necessary to remand for a clarification of the record, the court examines whether the record reveals evidentiary gaps that may result in unfairness or prejudice. *Lockwood v. Commissioner*, No. 1:07CV602, 2008 WL 4290844, at *8 (W.D. Mich. Sept. 18, 2008) (citing *Bailey v. Barnhart*, 39 Fed. Appx. 430, 434-435 (7th Cir. 2002); *Brown*, 44 F.3d at 935-936 (evidentiary gap of medical documentation supporting allegations of disability is undoubtedly prejudicial to claim for benefits)); *see generally Strang v. Commissioner*, 611 Fed. App'x 271, 276 (6th Cir. 2015) (lack of medical documentation undoubtedly prejudicial, quoting *Brown*).

Bourkhan's underlying claim challenges the Commissioner's determination that she was no longer disabled as of February 25, 2014, due to medical improvement. *See* R. 10, tr., at 94,

---

[4] Counsel informed the ALJ: "At the hearing, I advised that we were missing some records psychological therapy records from Stewart-Marchman-Act…." "The medical records department at Stewart-Marchman-Act advised me that Ms. Bourkhan had individual therapy on Dec. 29, 2014, Jan. 12, 2015, Jan. 26, 2015, Feb. 9, 2015, Feb. 23, 2015, and March 16, 2015. They will not, however, release the records to me personally, even though Ms. Bourkhan signed the necessary form. They will, on the other hand, release the records to Social Security." "With this letter, I am including a copy of SSA-827. The medical records department told me they would honor this form and release the records to you." (R. 10, tr., at 348).

1132. A determination of disability does not create a presumption of continuing disability. *Kennedy*, 2007 WL 2669153, at *3; *Cutlip v. Secretary, HHS*, 25 F.3d 284, 286 n.1 (6th Cir. 1994) (per curiam); *Booms v. Commissioner*, 277 F.Supp.2d 739, 744 (E.D. Mich. 2003). A person determined to be disabled is not entitled to the continuation of benefits if the disability dissipates to the extent that the person is able to perform gainful activity. *Booms*, 277 F.Supp.2d at 744.

> The Sixth Circuit, in *Kennedy*, addressed the issue of medical improvement as follows:
>
> The implementing regulations define a medical improvement as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." *Id.* And a medical improvement is related to an individual's ability to work only "if there has been a decrease in the severity ... of the impairment(s) present at the time of the most recent favorable medical decision and an increase in your functional capacity to do basic work activities ..." 20 C.F.R. § 404.1594(b)(3). *See also Nierzwick v. Commissioner of Social Security*, 7 Fed.Appx. 358 (6th Cir. 2001).

*Kennedy*, 2007 WL 2669153, at *3; *see also Booms*, 277 F.Supp.2d at 744.

The legal standards in the context discussed above inform and guide the undersigned's recommendation. The claimant contends that the decision from the district court judge for the Middle District of Florida "specified certain [progress note] dates that needed to be requested from Stewart-Marchman-Act [Behavioral Health], December 29, 2014, January 12, 2015, January 26, 2015, February 23, 2015, and March 16, 2015, and ordered the Commissioner to request them."[5] (R. 11, PageID #: 1892, 1906, citing R. 10, tr., at 1241-1242). The claimant concedes that, on June 25, 2018, the ALJ generally requested treatment records from August 28,

---

[5] As indicated in footnote 4, claimant's counsel also advised the ALJ of a February 9, 2015 progress note.

10

2014 to the then-present date from SMA, but contends that was insufficient because the ALJ did not specifically request the individual progress notes by date, as required by the remand order from the U.S. District Court for the Middle District of Florida. *Id.,* citing R. 10, tr., at 1599.

That district court had reversed and remanded the ALJ's 2011 decision because the court found that the ALJ "erred by failing to fully develop the record." (R. 10, tr., at 1239). The court noted that the claimant had argued that "the ALJ did not fully and fairly develop the record because there is no indication that the ALJ requested certain records from Claimant's provider of mental health services – Stewar[t]-Marchman-Act Behavioral Healthcare ("SMA")". *Id.* at 1241. At the hearing, counsel informed the ALJ that they may be missing some records from SMA, and the ALJ gave claimant ten days to obtain same. *Id.* at 1241-1242. Two days later, counsel informed the ALJ that SMA would release these records to the ALJ. *Id.* at 1242. Claimant's counsel specified that claimant attended individual therapy sessions at SMA on December 29, 2014, January 12, 2015, January 26, 2015, February 9, 2015, February 23, 2015, and March 16, 2015, but upon the district court's appellate review it noted that such records did not appear in the record before the court. *Id.* The court noted most of the evidence that the ALJ cited regarding claimant's cognitive abilities predated the relevant records that claimant had sought from SMA, and had asked the ALJ to request from SMA. *Id.*

The court indicated that the evidentiary gap from these missing SMA records was pertinent and prejudicial because the ALJ's underlying decision stated that none of claimant's treating sources had identified any specific job-related limitations, but the SMA records sought by Bourkhan would relate to therapy received from December 2014 through March 2015, "which would be statements pertaining to the current period in question, as Claimant was found to be not disabled as of February 1, 2014." (R. 10, tr., at 1243). The court further pointed out that

11

claimant had a significant decrease in attention and concentration from October to December 2014, and the missing records from the period immediately following that decline prejudiced claimant. *Id.*

Although the court did not specifically "order" the ALJ to obtain the specific SMA records at issue, it is clear—from the court's order finding that the ALJ erred by failing to fully develop the record—that the court intended for the ALJ to remedy the error by doing so. *See generally* R. 10, tr., at 1239-1245.

The Commissioner responds that on June 25, 2018, the ALJ, on remand, did request treatment records from "8/28/14 to Present" from SMA, a period of time that encompasses the specific dates at issue; and asserts that if there were any individual therapy treatment records during that period, SMA would have provided them to the ALJ. (R. 13, PageID #: 1927-1928, citing R. 10, tr., at 1599). Bourkhan asserts that "a request for records does not necessarily include a request for progress notes," which she argues are not readily released. (R. 14, PageID #: 1941). What is undisputed is that the records that SMA provided in response to the ALJ's request do not include any records dated December 29, 2014, January 12, 2015, January 26, 2015, February 9, 2015, February 23, 2015, or March 16, 2015. *See generally* R. 10, tr., at 1580-1602. The Commissioner seems to imply that the existence of such records is mere conjecture. (R. 13, PageID #: 1928-1929). The undersigned does not agree with that conclusion.

The record before this court contains a September 10, 2015, letter from claimant's counsel to the ALJ asserting that the medical records department at SMA informed counsel that claimant had therapy on the six dates in question, but they would not release those records to counsel and would only release these notes to Social Security Administration. (R. 10, tr., at 348). It is unclear why, then, SMA subsequently did not release the progress notes of these six

therapy sessions when, several years later, the ALJ requested records for the period August 2014 onward to June 25, 2018. *See generally* R. 10, tr., at 1599. The Commissioner's position would have the court conclude that either SMA's initial assertion to counsel in September 2015 regarding the six therapy sessions or claimant's counsel's representation regarding the same were in error. There is no basis from which to conclude that counsel misinformed the ALJ, and it would certainly be unusual for SMA to assert that six therapy sessions were held on specific dates if no such sessions were documented.

But there is more evidence before the court that supports the claimant's assertions that such records exist. An SMA record dated December 16, 2014, notes that "Client receives services from Dr. Susan Romaine for mental health and will be seeing a therapist for therapy at SMA." (R. 10, tr. At 1032, 1581). In addition, the records provided by SMA include a "Discharge Summary," dated November 18, 2015, that indicates Bourkhan had been treated at SMA since August 28, 2014, but was being discharged from therapy because she had "not contacted clinician regarding scheduling appointment for therapy, and clinician has not heard from client…." (R. 10, tr., at 1596). While that could indicate, as Commissioner seems to suggest (R. 13, PageID# 1927), that Bourkhan never followed up to make any therapy appointments, the second page of the Discharge Summary indicates otherwise. There, the document includes a Service Summary, which lists the services that the Bourkhan received at SMA. *Id.* at 1597. Among the services listed is "3100 Individual Therapy," which indicates the service was provided six times. *Id.* Although the Discharge Summary includes no specific dates for the individual therapy, this document lends credence to claimant's assertion that there should be progress notes and records for the contested six therapy sessions at SMA. There, however, are no other records for individual therapy among the SMA records in the medical

13

evidence of record before this court.  *See generally* R. 10, tr., at 1580-1602.

The Florida district court identified the prejudice to the claimant from these missing records, indicating, for example,

> Most indicative of the prejudice Claimant suffered from the evidentiary gap resulting from the ALJ's failure to obtain the most recent pre-hearing records from SMA is that the ALJ stated that "none of the claimant's treating sources have identified any specific job-related limitations. . . . There have been no statements made pertaining to the current period in question."   R. 28.   The records Claimant sought to obtain from SMA would be from her therapy received there from late December 2014, through March 2015, R. 348, which would be statements pertaining to the current period in question, as Claimant was found to be not disabled as of February 1, 2014.   \*\*\*\*
>
> SMA's records document a significant decrease in Claimant' attention and concentration from October 2, 2014 (adequate), to December 16, 2014 (moderately impaired).   R. 1022, 1030.   Additionally, there was a significant increase in Claimant's therapy visits to SMA following December 16, 2014, with Claimant attending therapy approximately every two weeks until March 16, 2015.   R. 348.   Although the ALJ found that Claimant is moderately impaired in concentration, persistence, and pace, the missing SMA records may demonstrate a more severe limitation.   Finally, the record does not contain a medical opinion from the time period of late December 2014 through March 2015 specifically evaluating Claimant's abilities in concentration, persistence, and pace.

(R. 10, tr., at 1243-44).   As the ALJ acknowledged in the most recent decision, '[p]ursuant to the District Court remand order, the Appeals Council has directed the undersigned [ALJ] to fully develop the medical record...."   (R. 10, tr., at 1111).   Despite the Florida district court's remand order, the evidentiary gap remains.

The court must conclude, therefore, that the ALJ did not fulfill the obligation to develop a full and fair record or explain the absence of the specific SMA records, particularly in light of the remand order from the Florida district court.   The undersigned recommends that the decision be reversed and remanded, for a more thorough development of the record.   *See Mefford*, 383 F.2d at 758; *see also Wilson*, 783 Fed. App'x at 497; *Inteso*, 2017 WL 9485668, at \*8; *Parsons*, 2012

WL 3853184, at *6; *see generally Brown*, 44 F.3d at 935-936; *Lockwood*, 2008 WL 4290844, at *8; *Ynocencio*, 300 F. Supp. 2d at 657.   Specifically, the undersigned recommends that the ALJ be ordered to request that SMA review its files and produce all progress notes and records relating to Bourkhan's individual therapy, including sessions on December 29, 2014, January 12, 2015, January 26, 2015, February 9, 2015, February 23, 2015, and March 16, 2015; and, if SMA concludes that no therapy or treatment occurred on or around such dates, then to certify the same.

The undersigned expresses no opinion regarding whether the additional evidence may or may not support the ALJ's findings on medical improvement and claimant's ability to work. But because the undersigned finds the record is incomplete at this juncture and recommends remand, the undersigned declines to address the claimant's remaining assignments of error, which further argue the ALJ's decision lacked substantial evidence.

## VI.   CONCLUSION

The court finds that the decision of the Commissioner is not supported by substantial evidence because the ALJ did not develop a full and fair administrative record consistent with the district court's previous remand order.   Therefore, the Commissioner's decision should be REVERSED and REMANDED for the reasons set forth above.   In particular, the Commissioner and ALJ should be ordered to request the Stewart-Marchman-Act Behavioral Healthcare records referenced at the conclusion of the section V *supra* and reconsider claimant's appeal.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: June 30, 2020

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).